# EXHIBIT D



NEW CENTURY
MORTGAGE CORPORATION
COMMERCIAL REAL ESTATE DIVISION

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $273,750.00 | 01-15-2004 | 02-01-2034 | 800000754 | 20 | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Allen Rostam
Zahra Rostam
6595 Edith Ct.
Troy, MI 48085

**Lender:** New Century Mortgage Corporation
Itasca Processing Center
18400 Von Karman
Suite 1000
Irvine, CA 92612

**Principal Amount: $273,750.00** **Date of Note: January 15, 2004**

**PROMISE TO PAY. Allen Rostam and Zahra Rostam ("Borrower") jointly and severally promise to pay to New Century Mortgage Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Seventy-three Thousand Seven Hundred Fifty & 00/100 Dollars ($273,750.00), together with interest on the unpaid principal balance from January 21, 2004, until paid in full. The interest rate will not increase above 13.250%.**

**PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 36 monthly consecutive principal and interest payments in the initial amount of $1,867.46 each, beginning March 1, 2004, with interest calculated on the unpaid principal balances at an initial interest rate of 7.250% per annum; 323 monthly consecutive principal and interest payments in the initial amount of $1,867.46 each, beginning March 1, 2007, with interest calculated on the unpaid principal balances at a discounted interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 1.170%), plus a margin of 5.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 7.250%; and one principal and interest payment of $1,864.29 on February 1, 2034, with interest calculated on the unpaid principal balances at an interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 1.170%), plus a margin of 5.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 7.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.** For the first 36 payments, the interest rate on this Note will be 7.250%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each 6 months. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 1.170% per annum. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates.** NOTICE: Under no circumstances will the interest rate on this Note be less than 7.250% per annum or more than (except for any higher default rate shown below) the lesser of 13.250% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 1.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT FEE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. **Upon prepayment of this Note, Lender is entitled to the following prepayment fee: See attached exhibit - Prepayment Fee Addendum. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.** Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: New Century Mortgage Corporation, 18400 Von Karman, Suite 1000 Irvine, CA 92612.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 8.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, convenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Michigan. This Note has been accepted by Lender in the State of Michigan.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by 8100 Schaefer Hwy., Detroit, MI 48228.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Promissory Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: New Century Mortgage Corporation P.O. Box 54285 Irvine, CA 92619

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

# PROMISSORY NOTE
(Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Allen Rostam

X _____
Zahra Rostam

LASER PRO Lending, Ver. 5.23.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2004 All Rights Reserved - MI J:\HARLAND\CFI\LPL\D20.FC TR-754 PR-23

Pay to the order of, without recourse

New Century Mortgage Corporation
By: _____
Name: Magda Villanueva
Title: A.V.P. / Shipping Manager

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $273,750.00 | 01-15-2004 | 02-01-2034 | 800000754 | 20 | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Allen Rostam
Zahra Rostam
6595 Edith Ct.
Troy, MI 48085

**Lender:** New Century Mortgage Corporation
Itasca Processing Center
18400 Von Karman
Suite 1000
Irvine, CA 92612

---

This THE PREPAYMENT FEE ADDENDUM is attached to and by this reference is made a part of the Promissory Note, dated January 15, 2004, and executed in connection with a loan or other financial accommodations between NEW CENTURY MORTGAGE CORPORATION and Allen Rostam and Zahra Rostam.

**I. Prepayment Fee Provisions.**

(A) A prepayment fee shall be payable in connection with any prepayment made under the Note as provided below:

(1) During the initial period when the interest rate is fixed as more particularly described in the PAYMENT section of the Note, (i.e. 36, 60, 84 or 120 months, as applicable) the "Prepayment Fee Period" Borrower may voluntarily prepay all of the unpaid principal balance of the Note on the last Business Day of a calendar month if Borrower has given Lender at least 30 days prior notice of its intention to make such prepayment. Such prepayment shall be made by paying (a) the entire outstanding principal balance of the Note, plus (b) all accrued interest, plus (c) all other sums due Lender at the time of such prepayment, plus (d) the prepayment fee calculated pursuant to Paragraph (II) herein (the "Prepayment Fee"). For all purposes including the accrual of interest, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month. For purposes of this Note, a "Business Day" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business. Borrower may not voluntarily prepay less than all of the entire outstanding principal balance of the Note.

(2) Upon Lender's exercise of any right of acceleration under the Note, Borrower shall pay to Lender (a) the entire outstanding principal balance of the Note, plus (b) all accrued interest, plus (c) all other sums due Lender at the time of such prepayment, plus (d) the Prepayment Fee.

(3) Any application by Lender of any collateral or other security to the repayment of any portion of the unpaid principal balance of the Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of the Prepayment Fee.

(B) Notwithstanding the provisions of Paragraph (I)(A), the Prepayment Fee shall not be payable with respect to (a) any prepayment made after the expiration of the Prepayment Fee Period, or (b) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument.

(C) Any permitted or required prepayment of less than the entire outstanding principal balance of the Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(D) Borrower recognizes that any prepayment of the unpaid principal balance of the Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating the Prepayment Fee represents a reasonable estimate of the damages Lender will incur due to a prepayment.

(E) Borrower further acknowledges that the Prepayment Fee provisions of the Note are a material part of the consideration for the Loan, and acknowledges that the terms of the Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the Prepayment Fee provisions.

**II. Prepayment Fee Calculation.**

(A) If the initial period when the interest rate is fixed as more particularly described in the PAYMENT section of the Note is for a period of 120 months (the "120-Month Fixed Period Prepayment Fee"), the Note shall be computed as follows:

(1) If the prepayment is made during the months 0 through 24, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 5% of the amount of the principal being paid.

(2) If the prepayment is made during the months 25 through 48, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 4% of the amount of the principal being paid.

(3) If the prepayment is made during the months 49 through 72, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 3% of the amount of the principal being paid.

(4) If the prepayment is made during the months 73 through 84, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 2% of the amount of the principal being paid.

(5) If the prepayment is made during the months 85 through 120, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 1% of the amount of the principal being paid.

(6) If the prepayment is made after the expiration of the Prepayment Fee Period, the Borrower shall be permitted to prepay the Loan in full and shall not be required to pay a prepayment fee.

(B) If the initial period when the interest rate is fixed as more particularly described in the PAYMENT section of the Note is for a period of 84 months (the "84-Month Fixed Period Prepayment Fee"), the Note shall be computed as follows:

(1) If the prepayment is made during the months 0 through 24, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 5% of the amount of the principal being paid.

(2) If the prepayment is made during the months 25 through 36, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 4% of the amount of the principal being paid.

(3) If the prepayment is made during the months 37 through 48, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 3% of the amount of the principal being paid.

(4) If the prepayment is made during the months 49 through 60, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 2% of the amount of the principal being paid.

(5) If the prepayment is made during the months 61 through 84, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 1% of the amount of the principal being paid.

(6) If the prepayment is made after the expiration of the Prepayment Fee Period, the Borrower shall be permitted to prepay the Loan in full and shall not be required to pay a prepayment fee.

(C) If the initial period when the interest rate is fixed as more particularly described in the PAYMENT section of the Note is for a period of 60 months (the "60-Month Fixed Period Prepayment Fee"), the Note shall be computed as follows:

(1) If the prepayment is made during the months 0 through 12, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 5% of the amount of the principal being paid.

(2) If the prepayment is made during the months 13 through 24, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 4% of the amount of the principal being paid.

(3) If the prepayment is made during the months 25 through 36, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 3% of the amount of the principal being paid.

(4) If the prepayment is made during the months 37 through 48, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 2% of the amount of the principal being paid.

(5) If the prepayment is made during the months 49 through 60, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 1% of the amount of the principal being paid.

(6) If the prepayment is made after the expiration of the Prepayment Fee Period, the Borrower shall be permitted to prepay the Loan in full and shall not be required to pay a prepayment fee.

(D) If the initial period when the interest rate is fixed as more particularly described in the PAYMENT section of the Note is for a period of 36 months (the "36-Month Fixed Period Prepayment Fee"), the Note shall be computed as follows:

(1) If the prepayment is made during the months 0 through 12, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 3% of the amount of the principal being paid.

(2) If the prepayment is made during the months 13 through 24, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 2% of the amount of the principal being paid.

(3) If the prepayment is made during the months 25 through 36, of the Prepayment Fee Period, the Prepayment Fee shall be equal to 1% of the amount of the principal being paid.

(4) If the prepayment is made after the expiration of the Prepayment Fee Period, the Borrower shall be permitted to prepay the Loan in full and shall not be required to pay a prepayment fee.

THIS THE PREPAYMENT FEE ADDENDUM IS EXECUTED ON JANUARY 15, 2004.

BORROWER:

X _____
Allen Rostam

X _____
Zahra Rostam

LASER PRO Lending, Ver. 5.23.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2004 All Rights Reserved. - MI J:\HARLAND\CFI\LPL\D20.FC TR-754 PR-23